```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
ELSA J. FREDERICK,                                          :
                                                            :
                              Plaintiff,                    :
                                                            :          **OPINION AND ORDER**
         -against-                                          :          14-CV-7238 (DLI)(RER)
                                                            :
JETBLUE AIRWAYS CORPORATION,                                :
                                                            :
                              Defendant.                    :
----------------------------------------------------------- x
```

**DORA L. IRIZARRY, U.S. District Judge:**

Elsa J. Frederick ("Plaintiff") commenced this action against JetBlue Airways Corporation ("Defendant" or "JetBlue") alleging discrimination on the basis of race and age in violation of: (i) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); (ii) the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"); (iii) "§1981(a) for Intentional Discrimination in Employment"; (iv) the New York State Human Rights Law ("NYSHRL"); and (v) the New York City Human Rights Law ("NYCHRL"). Amended Complaint ("Am. Compl.") at ¶ 1, Dkt. Entry No. 17. Defendant filed the instant motion to dismiss the amended complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a claim upon which relief may be granted under Rule 12(b)(6). Memorandum of Law in Support of Defendant's Motion to Dismiss ("Def. Mem.") at 1, Dkt. Entry No. 23.

For the reasons set forth below, Defendant's motion to dismiss is granted in its entirety. Plaintiff's Title VII and ADEA claims are dismissed as untimely, and Plaintiff's § 1981(a) claim is dismissed for failure to state a claim. Finally, the Court declines to exercise supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims.

1

**FACTUAL BACKGROUND**

*(A)   Plaintiff's Employment With Defendant*

Plaintiff is an African-American woman of West-Indian origin who was 57 years old at the time she filed her complaint. Am. Compl. at ¶ 8. In October 2001, Plaintiff began her employment with Defendant as a customer service agent at Defendant's John F. Kennedy International Airport location. *Id.* at ¶¶ 24-25. In February 2005, Defendant promoted Plaintiff to administrative supervisor in Defendant's administrative department. *Id.* at ¶¶ 25, 27. During the relevant period, there were five administrative supervisors who worked in the administrative department, including Plaintiff, who was the only African-American supervisor. *Id.* at ¶ 27. An individual named Eileen Faraon ("Faraon") oversaw Plaintiff and the other four administrative supervisors. *Id.* at ¶¶ 30, 35.

Sometime in 2012, Faraon instituted a policy that permitted the supervisors to arrive at work up to 30 minutes late, so long as they made up the time at the end of the workday. *Id.* at ¶ 32. Plaintiff and the other supervisors took advantage of this "grace period" frequently. *Id.* at ¶ 33. Specifically, Plaintiff alleges that another supervisor, Nancy Gamba ("Gamba"), arrived 30 minutes late almost every day. *Id.* She further claims that supervisor Juan Ruano ("Ruano") arrived late "on occasion," while supervisor Luiz Cruz ("Cruz") "usually arrived on time," but never made up his time on the days he arrived late. *Id.* at ¶ 34.

On June 17, 2013, Faraon and another JetBlue employee from the human resources department, Joanne Giuga ("Giuga"), summoned Plaintiff to a meeting to discuss Plaintiff's attendance and tardy arrivals. *Id.* at ¶¶ 43-44. At the meeting, Faraon presented Plaintiff with a document that catalogued Plaintiff's arrival times as determined by Plaintiff's "swipes."[1] *Id.* at ¶

---

[1] Plaintiff does not explain what a "swipe" is or how her "swipes" recorded her arrival times. *See generally*, *Id.*

44. Faraon noted that Plaintiff's "swipes" indicated that she had arrived after her scheduled start time.[2] *Id.* at ¶ 45. Plaintiff explained that for each late arrival, she had made up the time at the end of the day, in accordance with the policy. *Id.* Faraon informed Plaintiff that, "due to the amount of video Faraon would have to review," Faraon had not collected the "swipes" indicating Plaintiff's departure times.[3] *Id.* at ¶ 49. Faraon and Giuga offered Plaintiff an opportunity to further review the document listing Plaintiff's "swipes" and to provide a statement. *Id.* at ¶ 46. Plaintiff declined further review of the document, but agreed to provide a statement. *Id.*

On June 18, 2013, Faraon and another JetBlue employee, Julie Paulino ("Paulino") summoned Plaintiff to another meeting at which Faraon suspended Plaintiff without pay pending a further investigation of her arrival and departure times. *Id.* at ¶ 50. Faraon told Plaintiff that she was being suspended for "lying or providing false statements during an investigation," and "stealing or misuse of company time." *Id.* at ¶ 51. Specifically, Faraon accused Plaintiff of stating falsely during the June 17, 2013 meeting that Plaintiff had arrived late three times.[4] *Id.* Plaintiff denies that she made any such statement. *Id.* On June 28, 2013, Faraon called Plaintiff to notify her that Defendant had terminated her employment. *Id.* at ¶ 52.

Plaintiff alleges additional facts that, she claims, suggest an inference of discriminatory

---

However, based on the context of the amended complaint, the Court gathers that a "swipe" refers to the method by which JetBlue employees accessed the workplace, presumably by "swiping" an employee identification card. The Court further infers that the date and time of each "swipe" was electronically recorded, thus indicating the date and time employees arrived at work.

[2] It is unclear from the Amended Complaint how many times Faraon cited Plaintiff for being late based on her "swipes" during the June 17, 2013 meeting. Plaintiff suggests that Faraon accused her of three late arrivals, but Plaintiff does not indicate whether these accusations were based on her "swipes." *Id.* at 56. Furthermore, it appears that Faraon raised these three late arrivals during a different meeting that occurred on June 18, 2013. *Id.*

[3] Plaintiff does not explain why Faraon would have needed to review "video" to determine Plaintiff's departure times, if said times were determined by "swipes."

[4] Faraon's accusation that Plaintiff lied about being late three times sheds no light on how many times Plaintiff was accused of arriving late during the June 17, 2013 meeting. *See* n.2 above.

3

intent. For example, Plaintiff states that the other supervisors engaged in similar conduct regarding the "grace period" policy but were not similarly punished and remained employed by Defendant. *Id.* at ¶¶ 47, 53, 62. When Plaintiff advised Faraon that other supervisors had abused the policy, Faraon purportedly told Plaintiff that she would address the other supervisors at another time. *Id.* at ¶¶ 47, 53. Plaintiff states that, prior to June 17, 2013, Fararon never notified Plaintiff of any tardiness issues. *Id.* at ¶ 54.

Plaintiff further alleges that, "during meetings" Faraon would discount Plaintiff's opinions, but recognize the same opinions when offered by another supervisor. *Id.* at ¶ 36. Plaintiff also states that Faraon compared Plaintiff to other female supervisors in a "demeaning and condescending fashion" and "scrutinized Plaintiff's performance with greater severity than the other supervisors…." *Id.* at ¶¶ 37-38. According to Plaintiff, when she went on vacation for more than one week, the other supervisors complained to Faraon about the length of Plaintiff's vacations. *Id.* at ¶ 42.

*(B)  The EEOC Complaint and the Instant Lawsuit*

Plaintiff claims that she filed a complaint with the Equal Employment Opportunity Commission ("EEOC") that she describes as "timely." *Id.* at ¶ 6. Plaintiff does not provide the date she filed her EEOC complaint, nor does she include any information about its contents. *See generally*, *Id.* Plaintiff states that she received a "Notice of Right to Sue" from the EEOC dated September 12, 2013 (the "September Notice"), but she does not state when she received this document. *Id.* at ¶¶ 6-7. Plaintiff attached the September Notice as the sole exhibit to her amended complaint. *See* Am. Compl., Ex. A.

The September Notice is titled "Dismissal and Notice of Rights," and it states, in pertinent part, that "[b]ased upon its investigation, the EEOC is unable to conclude that the information

4

obtained establishes violations of the statutes." *Id.* It further states that:

> This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**[] or your right to sue based on this charge will be lost.

*Id.* (emphasis in original).

The September Notice is addressed to Plaintiff, Plaintiff's former counsel, Stephen Hans ("Hans"), and Defendant's director of employment counsel, Angela Corridan. *Id.* It states that it was mailed on September 12, 2014 and contains only one page. *Id.*

In its motion to dismiss, Defendant asserts Plaintiff received a separate Dismissal and Notice of Rights letter from the EEOC on or about July 22, 2014 (the "July Notice"). Def. Mem. at 7. In support of this claim, Defendant's counsel submitted an affidavit (the "Affidavit") averring the following:

- On or about July 22, 2014, Defendant's counsel received the July Notice, which is attached as Exhibit A to the Affidavit. Affidavit at ¶ 5.

- On or about April 15, 2015, Defendant's counsel received copies of EEOC agency records concerning Plaintiff's EEOC complaint in response to a Freedom of Information Act ("FOIA") request. *Id.* at ¶ 6.

- The EEOC agency records included a letter dated July 18, 2014 from the EEOC to Plaintiff (the "July 18 Letter"), which is attached as Exhibit B to the Affidavit. *Id.*

The July Notice is identical to the September Notice, except: (i) the July Notice is undated; and (ii) the July Notice contains a second page indicating it was mailed to Defendant's counsel. July Notice at 1-2. The July 18 Letter informs Plaintiff that her complaint will be dismissed because the EEOC could not find, based on the evidence submitted, that she was terminated

5

because of discriminatory animus. July 18 Letter. It further states: "Attached is your Dismissal and Notice of Rights [the July Notice]. If your client wishes to pursue this matter in federal court, the lawsuit must be filed within 90 days of your receipt of the Notice." *Id.*

The amended complaint does not mention the July Notice at all. *See generally*, Am. Compl. However, in her opposition to Defendant's motion to dismiss, Plaintiff tacitly concedes that she received the July Notice. *See* Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss ("Pl. Mem.") at 10, Dkt. Entry No. 26. Plaintiff states that the EEOC "issued" the July Notice on July 22, 2014, but she gives no indication as to when she received it. *Id.* The July Notice is attached as Exhibit C to the Plaintiff's opposition. *Id.*, Ex. C. Attached as exhibit B to her opposition is a letter from her former attorney, Hans, dated September 18, 2015 (the "Hans Letter"), in which Hans informs Plaintiff that she has "three months from the date of the enclosed [September Notice] to file a lawsuit." *Id.*, Ex. B. Plaintiff also states in her opposition that Hans "coordinated with the EEOC to procure" the September Notice. *Id*. at 10.

On December 11, 2014, Plaintiff filed her original complaint, *pro se*, which Defendant moved to dismiss on January 6, 2015. Dkt. Entry Nos. 1, 8. On March 25, 2015, the Court granted Plaintiff leave to amend her original complaint. Order dated March 25, 2015. On March 30, 2015, Plaintiff filed the amended complaint with the assistance of counsel, and on April 27, 2015, Defendant filed the instant motion to dismiss. Dkt. Entry Nos. 17, 22-24.

## DISCUSSION

**Legal Standard – Rule 12(b)(6)**

Rule 12(b)(6) states that, in lieu of an answer, a defendant may move for dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(B)(6). To determine whether dismissal pursuant to Rule 12(b)(6) is appropriate, "a court must accept as

6

true all factual allegations contained in a complaint," but need not accept "legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For this reason, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to insulate a claim against dismissal. *Id.* Moreover, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not shown that the pleader is entitled to relief." *Id.* at 679 (internal citations and quotation marks omitted).

**Timeliness of Plaintiff's Title VII and ADEA Claims**

*(A)     Rule 12(b)(6) is the Only Applicable Legal Standard*

To pursue a cause of action under Title VII or the ADEA, a plaintiff must file a complaint within 90 days of receiving a right-to-sue notice from the EEOC. 42 U.S.C. § 2000e-5(f)(1); 29 U.S.C. § 626(e); *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir. 1996) ("In order to be timely, a claim under Title VII or the ADEA must be filed within 90 days of the claimant's receipt of a right-to-sue letter."). Defendant argues that Plaintiff's Title VII and ADEA claims should be dismissed as untimely because Plaintiff filed her original complaint on December 11, 2014, more than 90 days after she received the July Notice on July 22, 2014. Def. Mem. at 6. Defendant asserts that the Court may consider its timeliness argument under either Rule 12(b)(1) or Rule 12(b)(6). *Id.*

In *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984), the Second Circuit held that district courts should treat the 90-day rule as a statute of limitations rather than a jurisdictional prerequisite. *Id.* (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398

7

(1982)); *see also Richards v. North Shore Long Island*, 2011 WL 6102055, at *3 (E.D.N.Y. 2011) (citing *Johnson*, 731 F.2d at 146) ("The ninety day time period is not a jurisdictional requirement for commencement of an action in the district court. Instead, the time limit is in the nature of a statute of limitations which may be tolled in certain situations."). A motion to dismiss based on a statute of limitations defense "is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted rather than a Rule 12(b)(1) motion to dismiss for lack of jurisdiction over the subject matter." *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989) (citing *Gordon v. Nat'l Youth Work Alliance*, 675 F.2d 356, 360 (D.C. Cir. 1982)); *see also Francis v. Blaikie Grp.*, 372 F. Supp. 2d 741, 743 (S.D.N.Y. 2005) (quoting *Ghartey*, 869 F.2d at 162). Accordingly, the Court considers the instant motion to dismiss under Rule 12(b)(6) only.

*(B)    Exclusion of Certain Documents and Arguments*

Defendant asserts that the Court may consider the Affidavit, as well as the exhibits attached to the Affidavit, without converting the motion to dismiss into a motion for summary judgment. Def. Mem. at 6. Plaintiff does not oppose the Court's consideration of these documents. *See generally,* Pl. Mem. In fact, as noted above, Plaintiff attaches the July Notice as an exhibit to her opposition and refers to the July Notice in her opposition. *See Id.* at 10; *Id.*, Ex. C.

Rule 12(d) provides that, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(b)(d). "As indicated by the word 'shall,' the conversion of a Rule 12(b)(6) motion into one for summary judgment under Rule 56 when the court considers matters outside the pleadings is strictly enforce[d] and mandatory." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) (internal citations and

quotation marks omitted); *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 202 (2d Cir. 2013) (citing *Global*, 458 F.3d at 155). The purpose of the conversion requirement is to ensure that a non-moving party receives notice that a court will consider extraneous materials. *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir.1991) ("[I]t is for that reason – requiring notice so that the party against whom the motion to dismiss is made may respond – that Rule 12(b)(6) motions are ordinarily converted into summary judgment motions.").

If a district court elects not to convert a 12(b)(6) motion, then as a general rule, its consideration is limited to "the allegations contained within the four corners of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998). Consideration of affidavits, exhibits, or factual assertions contained in legal memoranda is reversible error. *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (citing *Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir.1991) (additional citations omitted)). However, the Second Circuit has recognized that district courts may consider the following materials outside the complaint in deciding a Rule 12(b)(6) motion: (1) "documents attached to the complaint as an exhibit or incorporated in it by reference"; (2) "matters of which judicial notice may be taken"; and (3) "documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991)).

Here, the parties ask the Court to consider the following materials outside the complaint: the Affidavit, the July Notice, the July 18 Letter, and the Hans Letter. *See* Def. Mem at 6; Pl. Mem. at 10. The Affidavit must be excluded because *Friedl* flatly prohibits the Court from considering it without converting the instant motion into one for summary judgment. *Friedl*, 210

F.3d at 83. Similarly, the Court cannot consider the Hans Letter because, as a represented party, Plaintiff should have attached it to her amended complaint, not her opposition to the motion to dismiss. *Kpaka v. City Univ. of New York*, 2015 WL 4557331, at *1 n.3 (S.D.N.Y. July 28, 2015) ("Although courts in this Circuit have generally made clear that a plaintiff may not shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss, [a] district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in [her] papers opposing the motion.") (alternations in original) (internal citations and quotation marks omitted); *Holmes v. Fresh Direct*, 2015 WL 4885216, at *3 (E.D.N.Y. Aug. 5, 2015) (citing *Rosales v. Kikendall*, 605 F. App'x 12, 15 (2d Cir.2015) ("[W]here a plaintiff is proceeding *pro se*, factual assertions in the plaintiff's opposition to a motion to dismiss may be considered and treated as an amendment to the complaint.").

As for the July Notice and the July 18 Letter, these documents cannot be considered incorporated into the amended complaint, as Plaintiff never mentioned them in the amended complaint. *See generally,* Am. Compl. Similarly, although Plaintiff appears to have been in possession of these documents, she did not rely on them in bringing the amended complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("[P]laintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough.") (emphasis in original). However, courts in this Circuit have routinely taken judicial notice of EEOC determinations without converting 12(b)(6) motions into summary judgment motions. *Muhammad v. New York City Transit Auth.*, 450 F. Supp. 2d 198, 204-05 (E.D.N.Y. 2006) (finding EEOC's determination of plaintiff's EEOC charge a matter of "public record[], of which this Court may take judicial notice"); *Morris v. David Lerner Associates*, 680 F. Supp. 2d 430, 436 (E.D.N.Y.

10

2010) (quoting *Williams v. Thompson*, 2004 WL 3178072, at *4 n. 2 (D.Md. June 10, 2004) ("Courts have recognized that EEOC charges and right-to-sue letters are public documents that may be considered in a motion to dismiss without converting the action to a motion for summary judgment.") (internal quotation marks and additional citations omitted); *Sternkopf v. White Plains Hosp.*, 2015 WL 5692183, at *4 (S.D.N.Y. Sept. 25, 2015) (citing *Daniel v. Long Island Housing P'ship, Inc.*, 2009 WL 702209, at *5 n. 4 (E.D.N.Y. Mar. 13, 2009) (finding EEOC right-to-sue letter subject to judicial notice in deciding 12(b)(6) motion)).

The July Notice and the July 18 Letter are public documents that appear to constitute the EEOC's "determination" in this case. *See* July Notice ("The EEOC issues the following determination…."); *see also* July 18 Letter (notifying Plaintiff of EEOC's decision to dismiss her complaint). Moreover, Plaintiff does not dispute the authenticity of the July Notice or the July 18 Letter, nor does she argue that she would be unfairly prejudiced by their consideration without converting the motion to one for summary judgement. *See Sternkopf*, 2015 WL 5692183, at *4 ("[B]ecause, Plaintiff does not dispute the authenticity of any of the documents, I will [] consider them."). Accordingly, the Court takes judicial notice of the July Notice and the July 18 Letter without converting this motion into one for summary judgement. Having done so, the Court further takes judicial notice of the fact that the EEOC mailed the July Notice with the July 18 Letter on July 18, 2014. *See* July 18 Letter ("Attached is your Dismissal and Notice of Rights."). Because the law "presume[s] that a plaintiff receives the [right-to-sue] notice three days after it is mailed," Plaintiff is deemed to have received the July Notice on July 21, 2014. *Rivera v. Emerging Health Info. Tech.*, WL 5346097, at *2 (S.D.N.Y. Nov. 7, 2011) (citing *Sherlock v. Montefiore Medical Ctr.*, 84 F.3d 522, 525 (2d Cir.1996)).

(C)     *The Merits of Defendant's Timeliness Argument*

In the amended complaint, Plaintiff alleges her lawsuit is timely because she filed her original complaint within 90 days of receiving the September Notice. Am. Compl. at ¶¶ 6-7. Defendant argues that Plaintiff's Title VII and ADEA claims should be dismissed as untimely because Plaintiff filed her original complaint more than 90 days after she received the July Notice. Def. Mem. at 6-10. In response, Plaintiff asserts that, under the doctrine of equitable tolling, the 90-day period should run from the date of the September Notice because, (1) the July Notice was undated and (2) she reasonably relied on her former counsel's advice that she had three months from the date of the September Notice to file her lawsuit. Pl. Mem. at 9-12. For the following reasons, Plaintiff's equitable tolling argument fails.

The doctrine of equitable tolling "permits courts to extend a statute of limitations on a case-by-case basis to prevent inequity." *Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir. 2000) (citing *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir.1996) (additional citations omitted). Equitable tolling applies only in "'rare and exceptional circumstance[s].'" *Martinez v. Superintendent of E. Corr. Facility*, 806 F.3d 27, 31 (2d Cir. 2015) (quoting *Smith v. McGinnis*, 208 F.3d 13, 15 (2d Cir. 2000) (alteration in original)). To determine whether equitable tolling is available, a court must decide whether the party attempting to invoke the doctrine "(1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003) (quoting *Chapman v. Choicecare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002) (quotation marks omitted). "As a unanimous Supreme Court recently 'reaffirm[ed],' 'the second prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond its

control.'" *Haygood v. ACM Med. Lab., Inc.*, 2016 WL 944420, at *1 (2d Cir. Mar. 14, 2016) (summary order)(quoting *Menominee Indian Tribe of Wisc. v. United States*, 136 S.Ct. 750, 756 (2016)(emphasis in original). The party seeking to extend the limitations period bears the burden of proving that tolling is appropriate. *Chapman*, 288 F.3d at 512 (citing *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir.2000)).

As a threshold matter, the Court may not consider Plaintiff's argument that she relied on the advice of her former attorney. For the reasons discussed above, the Hans letter is excluded from the Court's consideration, as are any factual assertions in Plaintiff's opposition that are based on the Hans Letter. Thus, Plaintiff may only rely on the lack of a mailing date in the July Notice and her receipt of the September Notice to demonstrate that she is entitled to equitable tolling.

Plaintiff asserts that the lack of mailing date in the July Notice rendered it ambiguous, causing her to reasonably misunderstand when the 90-day deadline expired. Pl. Mem. at 11. This argument strains credulity given the content and formatting of the July Notice, which informed Plaintiff in no uncertain terms that her "lawsuit must be filed with 90 days of [] *receipt* of this notice. . . ." July Notice at 1 (emphasis added); *see also Rivera v. Emerging Health Info. Tech.*, 2011 WL 5346097, at *2 (S.D.N.Y. Nov. 7, 2011) ("The triggering event for the ninety days is the receipt of the EEOC notice by the plaintiff, not the issuance of it by the EEOC"). Accordingly, because the mailing date was unnecessary, its absence from the July Notice could not have rendered the July Notice ambiguous.[5]

Neither can Plaintiff's reliance on the September Notice ultimately save Plaintiff's untimely claims. In this Circuit, whether a plaintiff is entitled to equitable tolling because she received successive right-to-sue letters from the EEOC depends on the specific facts of the case.

---

[5] Even if the mailing date was relevant, the July Notice was enclosed with the July 18 Letter, which was dated July 18, 2014. Thus, Plaintiff did know the mailing date despite its absence from the July Notice.

*Brown v. JPMorgan Chase Bank, N.A.*, 2013 WL 4009795, at *6 (E.D.N.Y. Aug. 5, 2013) ("The timeliness of an employment discrimination lawsuit is not necessarily determined by the date of the first notice of right to sue."). For example, where a plaintiff deliberately procures the second right-to-sue notice for the sole purpose of avoiding the statute of limitations, the lawsuit will be barred as untimely. *See Lo v. Pan Am. World Airways*, *Inc.*, 787 F.2d 827, 828 (2d Cir. 1986) (per curiam). On the other hand, courts have equitably tolled the 90-day deadline where a plaintiff was understandably confused by successive EEOC right-to-sue letters. *See e.g.*, *Brown*, 2013 WL 4009795, at *6. This often occurs where the plaintiff has simultaneously filed an identical complaint with the EEOC and the New York State Division of Human Rights ("NYSDHR"). *Id.* (finding equitable tolling appropriate because of "the reasonable confusion caused by the EEOC and NYSDHR dual filing and review process"); *Ghosh v. New York City Dep't of Health*, 413 F. Supp. 2d 322, 330 (S.D.N.Y. 2006) (holding that plaintiff was entitled to equitable tolling where "he was, understandably, confused by the dual processing of his case by both agencies"). *But see Haygood*, 2016 WL 944420, at *1 (finding that the "district court did not abuse its discretion in determining that [the plaintiff] had not met the 'extraordinary' burden to invoke equitable tolling" in a case with facts substantially similar to those of *Brown* and *Ghosh*).

    Here, there is no indication that Plaintiff deliberately sought to avoid the deadline by procuring the September Notice. However, the fact that Plaintiff did not engage it the type of "chicanery" found is *Lo* is insufficient to meet the requirements for equitable tolling. *Reyes v. N. Shore Long Island Jewish Health Sys.*, 2002 WL 31180961, at *2 (E.D.N.Y. Oct. 2, 2002) (citing *Lo*, 787 F.2d at 828)). Unlike *Brown* and *Ghosh*, Plaintiff offers no justification, much less a reasonable one, for why the statutory period should run from the date of the second EEOC right-to-sue letter. She simply states that she "received the [September Notice] and commenced the

instant action within the statutory ninety (90) day period," without further explanation. Such *ipse dixit* does not demonstrate that Plaintiff encountered the type of "rare and exceptional circumstances" that warrant equitable tolling. *Martinez*, 806 F.3d at 31.

Of course, the foregoing analysis excludes Plaintiff's claim that she relied on the advice of her former attorney regarding the September Notice. However, even if the Court considered this argument, it would be insufficient to establish that Plaintiff is entitled to equitable tolling. In *Holland v. Florida*, 560 U.S. 631 (2010), the Supreme Court reaffirmed the principle "that a garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling." (internal citations and quotation marks omitted). *Id.* at 651-52. *Holland* further explained, in dicta, that a lawyer's failure to file a claim on time, or ignorance of the date on which the limitations period expired, "might suggest simple negligence." *Id.* at 652. On the other hand, a persistent failure to communicate with a client concerning significant matters could permit a finding of extraordinary circumstances. *Id.* at 652-53.

The case law of the Second Circuit has been consistent with this approach. *See Baldayaque v. United States*, 338 F.3d 145, 152 (2d Cir. 2003) ("[A]ttorney error *normally* will not constitute [] extraordinary circumstances … [but] at some point, an attorney's behavior may be so outrageous or so incompetent as to render it extraordinary.") (emphasis in original). For example, the Circuit has found extraordinary circumstances lacking in cases where an attorney has simply misunderstood the statute of limitations under the Anti-Terrorism and Effective Death Penalty Act. *Smaldone v. Senkowski*, 273 F.3d 133, 138 (2d Cir. 2001); *Geraci v. Senkowski*, 211 F.3d 6, 9 (2d Cir. 2000); *Baldayaque*, 338 F.3d at 152 (describing the errors committed by the attorneys in *Smaldone* and *Geraci* as "simple" and "ordinary"). Similarly, in *Keyse v. California Texas Oil*

*Corp.*, 590 F.2d 45, 47 (2d Cir. 1978) (per curiam), the court declined to equitably toll the Title VII limitations period where a plaintiff alleged that she was misadvised by her counsel.[6] However, in *Baldayaque*, equitable tolling was appropriate where a lawyer ignored specific instructions to file a petition under 28 U.S.C. § 2255, conducted no legal research, and never spoke to or met with his client. *Baldayaque*, 338 F.3d at 152; *see also Dillon v. Conway*, 642 F.3d 358, 364 (2d Cir. 2011) (finding extraordinary circumstances where an attorney "affirmatively and knowingly" misled a client by not filing a §2255 petition before the statutory deadline expired despite numerous assurances that the petition would be filed timely).

Here, according to Plaintiff, her former attorney, Hans, procured the September Notice from the EEOC, presumably based on the mistaken belief that a mailing date was required to determine the statutory deadline. Hans then erroneously advised Plaintiff that she had three months from the date of the September Notice to file her lawsuit in federal court. Although certainly deleterious to Plaintiff's claims, this conduct cannot be reasonably compared to the type of outrageous or extreme conduct that necessitated equitable tolling in *Baldayaque* or *Dillon*. Hans' errors are nothing more than "simple" or "ordinary" misunderstandings of law that do not amount to extraordinary circumstances.

Accordingly, Plaintiff's claims under Title VII and the ADEA are dismissed as untimely, with prejudice.

**Plaintiff's "§ 1981(a)" Claim**

In the third count of the amended complaint ("Count Three"), Plaintiff alleges that Defendant violated "§ 1981(a) for Intentional Discrimination in Employment." Am. Compl. at 17. Plaintiff's citation to "§ 1981(a)" is confusing, because it is not clear whether she is referring to

---

[6] The precedential weight of *Keyse* is limited, as it was decided before the equitable tolling standard discussed above had been fully developed.

16

42 U.S.C. § 1981, subsection (a), *i.e.* § 1981(a), or 42 U.S.C. § 1981a. Plaintiff's inclusion of parenthesis around the "a" indicates that she intended to refer to § 1981(a). However, the language of the amended complaint, particularly Count Three, is lifted verbatim from the text of § 1981a. For example, on the first page of the amended complaint, Plaintiff alleges that Defendant violated "§ 1981(a) for Intentional Discrimination in Employment…." Am. Compl. at ¶ 1. Similarly, Count Three is titled: "Violation of [] § 1981(a) for Intentional Discrimination in Employment." *Id.* at 17. This language mirrors that of § 1981a, which is titled: "Damages in cases of intentional discrimination in employment."[7] 42. U.S.C. § 1981a. Furthermore, under Count Three, Plaintiff complains that Defendant "engaged in unlawful intentional discrimination prohibited under section 703, 704, or 717 of the Act [42 U.S.C. 2000e-2, 2000e-3, 2000e-16]." Am. Compl. at ¶ 78. Again, this language matches precisely the text of § 1981a, which allows a plaintiff to recover damages in an action "against a respondent who engaged in unlawful intentional discrimination … prohibited under section 703, 704, or 717 of the Act [42 U.S.C.A. §§ 2000e-2, 2000e-3, or 2000e-16] …." 42 U.S.C. § 1981a(a)(1). Finally, § 1981a permits a plaintiff to recover compensatory and punitive damages, and Plaintiff seeks compensatory and punitive damages in Count Three. *See Id.*; *see also* Pl Mem. at ¶ 80.

The distinction between § 1981(a) and § 1981a is critical. § 1981 provides a substantive cause of action that is analyzed under the same standard as claims under Title VII. *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997) (citations omitted) ("In order to establish a *prima facie* case of discriminatory discharge in violation of Title VII or § 1981, a plaintiff must show (1) that he belongs to a protected class, (2) that he was performing his duties satisfactorily, (3) that he was discharged, and (4) that his discharge occurred in circumstances giving rise to an inference of

---

[7] By contrast, § 1981 is titled: "Equal rights under the law."

discrimination on the basis of his membership in that class."); *Timothy v. Our Lady of Mercy Med. Ctr.*, 2005 WL 3312054, at *4 (S.D.N.Y. Dec. 6, 2005) ("42 U.S.C. § 1981 claims are subject to the same burden shifting analysis as Title VII claims."). On the other hand, § 1981a "provides for no independent cause of action, but merely expands the remedies available to successful litigants filing claims pursuant to Title VII of the Civil Rights Act of 1964…." *Keady v. Nike, Inc.*, 116 F. Supp. 2d 428, 436 (S.D.N.Y. 2000) *vacated on other grounds*, 23 F. App'x 29 (2d Cir. 2001) (additional citations omitted); *Varner v. Illinois State Univ.*, 150 F.3d 706, 718 (7th Cir.1998) ("The plain language of 1981a shows that Congress intended to create an additional remedy for Title VII violations, as opposed to a separate cause of action."); *Bakhit v. Safety Markings, Inc.*, 33 F. Supp. 3d 99, 106 (D. Conn. 2014) (dismissing counts "based on section 1981a, … because the plaintiffs did not bring Title VII claims, and section 1981a only provides additional remedies to Title VII claimants…."). Thus, if Plaintiff alleged Count Three under § 1981a, it must be dismissed, because the Court dismissed her Title VII claim as untimely, and § 1981a does not provide an independent cause of action.

Based on its motion to dismiss, Defendant clearly believed that Plaintiff sought relief under § 1981(a), rather than § 1981a. *See* Def. Mem. at 10 (citing 42 U.S.C. § 1981); *Id.* at 11 (citing *Timothy*, 2005 WL 3312054, at *4). While it was not unreasonable for Defendant to adopt this view of the amended complaint, the Court does not share it. First, Plaintiff quotes directly and extensively from the text of § 1981a, which strongly suggests that she intended to employ that statute, not § 1981(a). Second, Plaintiff seeks compensatory and punitive damages, which are available under § 1981a based on liability under Title VII, but are not available under § 1981. If Plaintiff had succeeded on the merits of her Title VII claim, she would have been entitled to benefit from the damages provision of § 1981a. However, the fact that her Title VII claim was dismissed

18

does not permit the parties, or the Court, to reinterpret Count Three as arising under a different statute.

Finally, even if Plaintiff intended to bring a substantive claim under § 1981(a), but mistakenly quoted § 1981a, dismissal still would be appropriate. Significantly, Plaintiff was not proceeding *pro se* when she filed the amended complaint. *See McInerney v. Rensselaer Polytechnic Inst.*, 505 F.3d 135, 138 (2d Cir. 2007) (citing *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir.2007) ("The need to draw all inferences in the plaintiff's favor has heightened application when the plaintiff is proceeding *pro se*.")). If Plaintiff's counsel intended to bring a substantive claim of racial discrimination under Count Three, his extensive quotation from § 1981a was in serious error. *See Bloomfield v. Banco Bilbao Vizcaya S.A.*, 1995 WL 49269, at *1 (S.D.N.Y. Feb. 8, 1995) (sanctioning plaintiff's counsel $1000 for, among other things, moving to amend a complaint to assert a separate cause of action under § 1981a).

Accordingly, Count Three is dismissed, with prejudice.

**Plaintiff's NYSHRL and NYCHRL Claims**

Under 28 U.S.C. § 1367(c)(3), "a district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)). A district court's discretion is guided by "balanc[ing] the traditional 'values of judicial economy, convenience, fairness, and comity.'" *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors … will point toward declining to exercise jurisdiction over the remaining state-law claims." *Cohill*, 484 U.S. at 350 n.7.

Considering the above factors, there is no justifiable reason for the Court to exercise

supplemental jurisdiction over Plaintiff's remaining state and city law claims, which are dismissed without prejudice.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Title VII and ADEA claims are dismissed as untimely. Plaintiff's § 1981(a) claim also is dismissed for failure to state a claim, and the Court declines to exercise supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims.

SO ORDERED.

Dated: Brooklyn, New York
      March 31, 2016

/s/
DORA L. IRIZARRY
United States District Judge